## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION IN ADMIRALTY

| | | |
|---|---|---|
| BERENYI, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| NUCOR CORPORATION, *by and through its* | ) | No. 2:20-cv-03170-DCN |
| *Berkeley Division*; KINDER MORGAN | ) | |
| BULK TERMINALS, LLC f/k/a/ KINDER | ) | **ORDER** |
| MORGAN BULK TERMINALS, INC.; and | ) | |
| KINDER MORGAN MID ATLANTIC | ) | |
| MARINE SERVICES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the court on defendants Kinder Morgan Bulk Terminals, LLC f/k/a Kinder Morgan Bulk Terminals, Inc. ("Kinder Morgan Terminals") and Kinder Morgan Mid Atlantic Marine Services, LLC's ("Kinder Morgan MS") (collectively, "Kinder Morgan" or the "Kinder Morgan defendants") motion for summary judgment, ECF No. 45, and plaintiff Berenyi, Inc.'s ("Berenyi") motion to amend the scheduling order to permit the filing of an amended complaint, ECF No. 63. For the reasons set forth below, the court denies Berenyi's motion to amend and denies the Kinder Morgan defendants' motion for summary judgment.

## I.  BACKGROUND

Defendant Nucor Corporation ("Nucor") manufactures steel products in the United States. It owns and operates a steel facility in Berkeley County, South Carolina. The facility includes an inland port, or berth, on the Cooper River which Nucor uses to unload materials from barges for transport to the facility. In 2016, Nucor hired Berenyi

1

as a contractor to design, excavate, and construct an extension to the berth. Berenyi devised a plan to drive sheet piling into the eastern end of the existing berth, thus forming a temporary sheet pile wall where the existing and expanded berth would join. The sheet pile wall was intended to prevent water from the Cooper River from flowing into the area behind the wall while it was being excavated to form the expanded berth.

While the berth extension project was ongoing, Nucor continued to use the berth to transport materials to its facility. As part of that work, Kinder Morgan Terminals had previously entered into an Independent Contractor Agreement with several Nucor entities, including Nucor's Berkeley Division, to provide workmen and equipment for processing, warehousing, stevedoring, and other marine services. Kinder Morgan MS owned a fleet of barges that were used to deliver materials to Nucor's port facility. Stevens Towing Co., Inc. ("Stevens Towing") was hired to tow the barges to Nucor's port, and both Kinder Morgan and Stevens Towing were responsible for tying up the barges to the berth.

On September 8, 2017, the Nucor facility was shut down due to the threat posed by Hurricane Irma. All but a few Nucor employees were released from their shifts, and similarly, Berenyi and Kinder Morgan employees were ordered to shut down operations and secure their equipment in preparation for the storm. As a result, the only individuals present at the facility on the night of September 8 were the maintenance and safety personnel who were shutting down the manufacturing plant. During the night, the temporary sheet pile wall collapsed, causing water to flood into the excavated area of the extended berth. A Nucor employee discovered the collapsed wall at approximately 5:30 a.m. on September 9. No one had witnessed the collapse. According to the complaint, a

2

barge or barges owned by Kinder Morgan MS caused the collapse when the barge or barges allided with the sheet pile wall.  On September 3, 2020, Berenyi filed suit against Nucor, the Kinder Morgan defendants, and Stevens Towing[1] in this court, alleging causes of action for negligence and gross negligence.  ECF No. 1, Compl.

On February 14, 2022, the Kinder Morgan defendants filed their motion for summary judgment.  ECF No. 45.  Berenyi responded in opposition on March 23, 2022, ECF No. 54, and the Kinder Morgan defendants replied on April 7, 2022, ECF No. 59. On May 11, 2022, Berenyi filed its motion styled as a motion to amend the scheduling order to permit the filing of an amended complaint.[2]  On May 25, 2022, the Kinder Morgan defendants responded in opposition.  Berenyi did not file a reply, and the time to do so has now elapsed.  On June 9, 2022, the court held a hearing on both motions.  ECF No. 69.  As such, both motions have been fully briefed and are now ripe for review.

## II.  STANDARD

### A.  Motion to Amend

"[A]fter the deadlines provided by a scheduling order have passed, the [Rule 16(b)] good cause standard must be satisfied to justify leave to amend the pleadings." Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008).  Rule 16(b)'s good cause standard "focuses on the timeliness of the amendment and the reason for its tardy submission; the primary consideration is the diligence of the moving party." Montgomery v. Anne Arundel Cnty., 182 F. App'x 156, 162 (4th Cir. 2006); see RFT

---

[1] Stevens Towing was voluntarily dismissed from the action on March 30, 2022. ECF No. 56.

[2] For ease of reference, the court simply refers to the motion as a motion to amend.

3

Mgmt. Co., LLC v. Powell, 607 F. App'x 238, 242 (4th Cir. 2015). "In seeking leave to amend, the 'movant must demonstrate that the reasons for the tardiness of his motion justify a departure from the rules set by the court in its scheduling order.'" Thomason v. Toyota Motor Eng'g & Mfg. N. Am., Inc., 2017 WL 10901214, at *6 (D.S.C. Mar. 6, 2017) (citing United States v. Godwin, 247 F.R.D. 503, 506 (E.D.N.C. 2007)).

"If the movant satisfies Rule 16(b)'s 'good cause' standard, [he] must then pass the requirements for amendment under Rule 15(a)." Dilmar Oil Co. v. Federated Mut. Ins. Co., 986 F. Supp. 959, 980 (D.S.C. 1997). Under Rule 15, a party may amend a pleading as a matter of course within 21 days after serving it; however, in all other cases, a party may amend its pleading only with the opposing party's consent or the court's leave. Fed. R. Civ. P. 15(a). "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "A motion to amend should be denied 'only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" HCMF Corp. v. Allen, 238 F.3d 273, 276 (4th Cir. 2001) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999)) (emphasis in original).

**B. Motion for Summary Judgment**

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine

issue of material fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Id.</u> at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u> "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Id.</u> at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. <u>Id.</u> at 255.

### III.  DISCUSSION

There are two motions before the court: the Kinder Morgan defendants' motion for summary judgment and Berenyi's motion to amend the complaint. Since Berenyi's motion to amend proposes a new scenario or narrative that it arguably relies upon to contend that summary judgment is improper, the court addresses the motion to amend first. Finding that the motion to amend should be denied, the court then addresses the Kinder Morgan defendants' motion for summary judgment.

### A.  Motion to Amend

Berenyi moves for the court to amend the scheduling order to allow it to file an amended complaint. According to Berenyi, an amendment is needed to reflect the settlement with Stevens Towing and "to amend its allegations involving the remaining Defendants to conform to the evidence." ECF No. 63 at 2. In response, the Kinder Morgan defendants argue that Berenyi is attempting to alter its <u>theory</u> of the case that Berenyi previously presented in the complaint. The Kinder Morgan defendants further

5

argue that Berenyi had long been on notice of the new facts that supposedly necessitated the amendment, meaning that Berenyi unreasonably delayed in bringing this motion.

Before analyzing the legal merits of the parties' arguments, the court finds a review of the history of Berenyi's allegations instructive. In many respects, Berenyi kept the factual allegations in its complaint open, likely pending confirmation from discovery.[3] For example, the complaint did not specify whether it was a single barge or multiple barges that allegedly allided with the sheet pile wall. On the other hand, the complaint strongly suggested—if not outright alleged—that the allision occurred in a particular manner. In the complaint, Berenyi alleges that a Kinder Morgan barge had been photographed at the south side of the Nucor berth at 10:45 a.m. on September 8, 2017, but it was no longer there on the morning of September 9. Compl. ¶¶ 31, 33. Berenyi alleged that Stevens Towing and Kinder Morgan, without Berenyi's knowledge, moved that barge from the south wall to the north wall during the evening of September 8. Id. ¶ 32. The complaint alleges that in the course of relocating the barge to the north wall, defendants struck the sheet pile wall with the barge. Id. ¶ 34. In March, Bereyni settled its claims against Stevens Towing, and it now seeks to amend the complaint to reflect the discovery of "new" information. The Kinder Morgan defendants submit that these decisions were motivated by the realization that "the narrative originally described by Berenyi is not supported by the evidence." ECF No. 66 at 6. Specifically, they refer

---

[3] The Federal Rules of Civil Procedure contemplate the use of discovery to round out the claims set forth in the complaint. See In re Kunstler, 914 F.2d 505, 516 (4th Cir. 1990) (finding that under Rule 11, "the factual inquiry necessary to file a complaint is generally satisfied if all of the information which can be obtained prior to suit supports the allegations made, even though further facts must be obtained through discovery to finally prove the claim").

to evidence produced that in the morning of September 8, 2017, Stevens Towing dropped off the second of two barges on the north side wall, continued south to pick up the south side barge, and then moved that barge down the river at around 12:40 p.m.  No Stevens Towing tug returned to the Nucor site until September 10, meaning Stevens Towing never used a tug boat to move a Kinder Morgan barge from the south side of the berth to the north side.  Rather, there were always two barges on the north side, which is the alignment that was discovered on the morning of September 9.

Since the new evidence clearly shows that Berenyi's original theory was not correct, Berenyi has now "clarified" its rendition of the facts.  Now, according to Berenyi, the barge docked closest to the sheet pile wall on the north side of the berth was moved away from the dock by the wind and water during the evening of September 8 and struck the sheet pile wall.  See ECF No. 54 at 6.  Berenyi acknowledges that the barge was not found up against the sheet pile wall on the morning of September 9; however, it insinuates that someone could have moved the barge back to where it had been docked.  See id.  Berenyi now wishes to omit the allegation that a barge had been moved from the south side of the berth to the north side on the evening of September 8 from the complaint.  See ECF No. 63-2 ¶ 32 (removing the phrase "had been moved from the south wall of the berth . . ." in the proposed amended complaint).  Berenyi simultaneously seeks to add various allegations regarding the evening of September 8, 2017.  See id. ¶¶ 31–32.

Turning to the legal arguments, both parties agree that the good cause standard governs because the deadline for amending pleadings, as set forth in the scheduling order, has passed.  Additionally, more than twenty-one days has elapsed since Berenyi served

its complaint; therefore, Berenyi must also satisfy the Rule 15(a) standard to amend its complaint.  The court considers each standard in turn.

### 1.  Good Cause Standard

First, Berenyi argues that there is good cause to modify the scheduling order to allow it remove references to Stevens Towing in the amended complaint.  In response, the Kinder Morgan defendants argue that Berenyi did not need to request an amendment to the complaint to remove Stevens Towing as a defendant, and it is more likely that Berenyi seeks to do so to allege its new theories of liability at the same time.  Indeed, as the court noted at the hearing, defendants are almost always dismissed from cases without necessitating an amendment.  See, e.g., Johns v. Leonard, 2019 WL 652439, at *1 (W.D. Wis. Feb. 15, 2019) (denying motion to dismiss to the extent it sought to dismiss a defendant that had entered into a settlement agreement with the plaintiff).  This is especially true since this would be a nonjury trial.  Nevertheless, the court will provide Berenyi with the benefit of doubt and avoid delving into its motivations.  Even so, the court must also analyze Berenyi's request to amend the complaint to omit the reference to defendants relocating the barge to the north side of the wall, which certainly reflects an attempt to alter its factual allegations.  Berenyi argues that such amendments are supported by good cause because there were "important facts that were previously unknown regarding the incident that . . . were gleaned during the recent depositions taken in this case."  ECF No. 63 at 3.  In response, the Kinder Morgan defendants argue that Berenyi lacks good cause to circumvent the scheduling order because it has known about the information since at least November 2021.  Moreover, it argues that Berenyi should not be allowed to avoid summary judgment by amending the complaint.

The parties' arguments raise two principles that appear, on first blush, to be in tension. On one hand, "[c]ourts in this circuit . . . have routinely concluded that new information uncovered during the course of discovery constitutes good cause sufficient to satisfy the rigors of Rule 16, when such information is relayed to the Court promptly and diligently." Brightview Grp., LP v. Glynn, 2022 WL 743937, at *11 (D. Md. Mar. 11, 2022). After all, it is not uncommon for litigants to assert new facts after some discovery has been conducted to build on the allegations in the complaint. See Virtuality L.L.C. v. Bata Ltd., 138 F. Supp. 2d 677, 683 (D. Md. 2001) ("The allegations of a complaint [that] are not later supported by facts established by the record is hardly an unusual occurrence."); Michael Moffitt, Pleadings in the Age of Settlement, 80 Ind. Law. J. 727, 730 (2005) ("The current pleading system is not designed to lock parties into factual allegations early in the litigation process."). On the other hand, multiple courts have determined that a "plaintiff may not amend his pleadings to avoid summary judgment." Bryan v. Def. Tech., U.S., 2011 WL 4435597, at *4 (D.S.C. Aug. 10, 2011), report and recommendation adopted, 2011 WL 4435579 (D.S.C. Sept. 23, 2011), aff'd, 466 F. App'x 208 (4th Cir. 2012).

Upon a deeper dive, the court finds that these principles are not necessarily incompatible. While courts will permit litigants to amend the complaint after the deadline to account for the discovery of new evidence, it will only do so where those litigants acted diligently to raise the new claims. See U.S. Home Corp. v. Settlers Crossing, LLC, 2012 WL 3536691, at *6 (D. Md. Aug. 14, 2012) (acknowledging that good cause existed in prior cases where plaintiffs sought leave to amend their complaint two-and-half weeks and six days after learning about new predicate facts but finding that

an eight-month delay was not proper). Similarly, a plaintiff may not rely on the discovery of new evidence to show good cause when he delays bringing an amendment after the defendant put him on notice of deficiencies in the complaint. See Hagerty ex rel. U.S. v. Cyberonics, Inc., 844 F.3d 26, 35 (1st Cir. 2016) (affirming trial court's denial of leave to amend because the plaintiff waited more than a year to fix its complaint after the defendant filed its motion to dismiss).

As such, the court takes no issue with Berenyi's stated reason for good cause—that it identified new facts during discovery. Instead, the court takes issue with Berenyi's lack of diligence in acting on the new information. Berenyi submits that it learned about new, previously unknown information during "depositions conducted in January 2022."[4] ECF No. 63 at 3–4. But Berenyi did not file its motion to amend until May 11, 2022, roughly five months after it purportedly learned of the new information from depositions. The Kinder Morgan defendants argue that Berenyi has known about the new information for even longer than it claims; they state that in an email dated November 20, 2021, their counsel produced the report of John E. Cameron ("Cameron"), which applied "GPS/AIS location data" from the Stevens Towing tugboats to "directly rebut[] Plaintiff's barge movement theory." ECF No. 66 at 7 (citing ECF No. 66-1 at 14). In addition to Cameron's report, defendants also produced a "Tug Island Progress daily log" that also

---

[4] Berenyi never clarifies what this newly-discovered evidence is in its motion to amend. It took clarification from the Kinder Morgan defendants' response brief, as well as Berenyi's response to the motion for summary judgment, for the court to grasp what evidence Berenyi is referring to. The Kinder Morgan defendants argue that this should be grounds alone for finding that the motion to amend is unsupported by good cause. The court recognizes the validity of that argument, but for Berenyi's benefit, the court favorably construes Berenyi's argument as concerning the new evidence used to support its response to the motion for summary judgment.

purportedly recorded the fact that the tugs did not return to the Nucor facility on September 9. See ECF Nos. 45-11.

The court agrees with Kinder Morgan that the timing of Berenyi's motion to amend is dubious. Here, Berenyi either delayed five months after depositions were taken or seven months after it received Cameron's report. In either case, the delay certainly cannot be considered brief when compared to the delays that other cases deemed reasonable. See, e.g., Felcor Lodging Ltd. P'ship v. Kingston Concierge, LLC, 2010 WL 11475232, at *2 (D.S.C. May 18, 2010) (granting motion for leave to amend complaint when it was filed fifteen days after discovery of the new information). In fact, courts have found a lack of diligence for delays of similar lengths. See, e.g., Dexter v. Lake Creek Corp., 2013 WL 1898381, at *9 (E.D.N.C. May 7, 2013) (denying motion to amend where plaintiff waited four months after learning new information to seek amendment); SubAir Sys, LLC v. PrecisionAire Sys., Inc., 2008 WL 11349780, at *2 (D.S.C. Sept. 30, 2008) (same, after delays of two and three months).

Even if the court were to overlook the timing of Berenyi's motion vis-à-vis the discovery of new information, Berenyi's delay is aggravated by the fact that Berenyi did not file its motion until after the Kinder Morgan defendants filed their motion for summary judgment and Berenyi had responded. Courts look disfavorably upon motions to amend brought for the purpose of circumventing dispositive motions. Indeed, several courts in this circuit have denied a plaintiff's motion to amend—and proceeded under the plaintiff's original complaint—where the timing of the motion suggested that the primary purpose was to avoid summary judgment. See, e.g., Goewey v. United States, 886 F. Supp. 1268, 1284 (D.S.C. 1995) (denying motion to amend because it "appear[ed] to be

an eleventh hour attempt to evade a grant of summary judgment by grasping at new legal theories"); Witt v. Am. Trucking Ass'ns, Inc., 860 F. Supp. 295, 305 (D.S.C. 1994) ("A motion for leave to amend is not a vehicle to circumvent summary judgment.  After the parties have conducted discovery and a pending summary judgment motion has been fully briefed, the court should be strongly disinclined to grant leave to amend, particularly where no good cause can be shown for the delay.") (cleaned up); accord Simpson v. Temple Univ., 2019 WL 3496206, at *2 (E.D. Pa. Aug. 1, 2019) (finding that the defendants were prejudiced after they "defended th[e] case on the basis of Plaintiff's original allegations, including the filing of a motion for summary judgment," and the plaintiff subsequently sought to "relitigate her claims under a different and contradictory set of facts").  Since "[t]he purpose of the rules governing pleading and discovery is to put the opposing party on notice about the underlying basis of each side's case," that purpose may be defeated if the plaintiff waits until after discovery and after motions for summary judgment have been filed to alter its theory of the case.  See Brownlee v. W. Fraser, Inc., 2015 WL 628179, at *5 (D.S.C. Feb. 12, 2015).  Here, Berenyi did not file its motion to amend until seven weeks after it responded to Stevens Towing and the Kinder Morgan defendants' motions for summary judgment, signaling a great likelihood that Berenyi was motivated to amend its complaint, at least in part, to avoid summary judgment.

Perhaps recognizing the timing issues, Berenyi claims that its delay was reasonable because it waited to submit its motion to amend while it was in mediation with Stevens Towing so that it could obtain full "clarification" of the necessary amendments.  As noted above, the court expressed skepticism of this argument at the

hearing; again, Berenyi would not have needed an amendment to remove Stevens Towing as a defendant, so it could have filed an amendment for its factual allegations far sooner. In the absence of any other reason for the delay or why the motion was filed only after the motions for summary judgment had been filed, the court finds that no good cause has been shown. Ultimately, "[t]he decision to grant leave to amend a complaint is committed to this court's discretion." Dodd v. City of Greenville, 2006 WL 8446413, at *1 (D.S.C. Jan. 9, 2006) (citing Foman v. Davis, 371 U.S. 178 (1962)). The court, in its discretion, denies Berenyi's motion to amend the complaint under the good cause standard.

### 2. Rule 15(a) Standard

Alternatively, the court finds that Berenyi has not satisfied the Rule 15(a) standard for amending the complaint either, which Berenyi must do because more than twenty-one days have passed since it served its complaint. The good cause and Rule 15(a) analyses are similar, as even under Rule 15(a)'s more forgiving standard, motions to amend "should be made as soon as the necessity for altering the pleading becomes apparent." Deasy v. Hill, 833 F.2d 38, 41 (4th Cir. 1987). Moreover, Rule 15(a) provides that the court, in its discretion, may deny leave to amend where there is prejudice, bad faith, or futility. Here, the parties focus on whether the amendment would be unduly prejudicial to the Kinder Morgan defendants, and the court follows suit.

The Kinder Morgan defendants argue that the proposed amendment allows Berenyi to change its theory of liability, which unduly prejudices them. "Multiple courts have denied leave to amend where a proposed amended complaint contradicts an assertion in a prior version of the complaint." In re Smith & Nephew Birmingham Hip

Resurfacing Hip Implant Prods. Liab. Litig., 2020 WL 407136, at *3 (D. Md. Jan. 24, 2020) (collecting cases); see also Davis v. Complete Auto Recovery Servs., Inc., 2017 WL 6501761, at *3 (D. Md. Dec. 18, 2017) (finding that a plaintiff's "turnabout from the premise of her prior amended complaint . . . is in bad faith"). And, as discussed earlier, those concerns are further implicated when a motion to amend is filed while there is a pending, fully-briefed motion for summary judgment. In response, Berenyi argues that the proposed amendment would not prejudice the Kinder Morgan defendants because the changes are "miniscule" and because Berenyi "is not adding additional causes of action, requiring additional discovery, or seeking new or different damages." ECF No. 63 at 4. Yet each of those assertions are belied by what has already occurred to date. Berenyi claims the changes are minimal, and to be sure, "[p]rejudice . . . hardly flow[s]" from the addition of allegations "derived from evidence obtained during discovery regarding matters already obtained in the complaint in some form." See Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999); see also Williams v. Int'l Longshoremen's Ass'n, Local No. 333, 2006 WL 8456669, at *3 (D. Md. Nov. 14, 2006) (finding that the defendants would not be unduly prejudiced by an amended complaint because it merely set out more detail of facts alleged in the complaint). But Berenyi's proposed amendments alter its entire narrative, as evidenced by the largely-new arguments that the Kinder Morgan defendants were forced to present in their reply brief—a decision the court does not consider unreasonable. As for Berenyi's contention that it is asserting no new legal causes of action or damages, the court agrees that this distinction would ordinarily weigh against finding prejudice. See Williams v. N. Am. Partners in Anesthesia (Md.), LLC, 2006 WL 8457041, at *1 (D. Md. May 2, 2006) ("Although

Plaintiff proposes numerous factual amendments, she asserts no new substantive claims. As such, the Court finds that the essence of the complaint has not been significantly transformed, and Defendant is unlikely to be prejudiced by the proposed amendments."); Connelly v. Gen. Med. Corp., 880 F. Supp. 1100, 1110 (E.D. Va. 1995) (finding no prejudice where amendment involved new factual allegations and "the Court [could] easily stir these new allegations into the analytical brew of [the] case and still apply the same controlling legal principles").  While the court would have been inclined to find that this factor weighs in Berenyi's favor, the court notes again that the amendment was only raised after the motion for summary judgment had been filed.  "Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing." Laber v. Harvey, 438 F.3d 404, 427 (4th Cir. 2006).

Finally, Berenyi claims that there is no need for additional discovery.  The Kinder Morgan defendants do not argue that additional discovery is needed.  After all, Berenyi's new theory is largely premised on a lack of information.  Even so, for the other reasons discussed above, the court finds that the Kinder Morgan defendants have and will be unduly prejudiced by an amendment.  The court thus denies leave to amend the complaint.

### B.  Motion for Summary Judgment

In their motion for summary judgment, the Kinder Morgan defendants seek summary judgment on Berenyi's claims based on Berenyi's theory that the wall was damaged while the barge was in transit.  In its response, Berenyi asserts the now-familiar theory that the wall was damaged by a barge docked on the north wall because it was improperly tied and drifted from its moorings.  The Kinder Morgan defendants respond to

15

that new theory in their reply.  Since the court denies Berenyi's motion to amend, the court will not permit Berenyi to argue against summary judgment unless its arguments equally support the original complaint.  In other words, the issue becomes whether Berenyi's arguments apply to any of the allegations in the original complaint.  The court answers this in the affirmative.  While the complaint alleges that defendants were negligent for failing to control the movement of a tugboat, it separately alleges that defendants "failed to properly secure and moor the barge which had been moved within the berth on the afternoon or night of September 8 or the morning of September 9, 2017." Compl. ¶ 35(b).  Certainly, that allegation mentions that a barge was "moved within the berth" even though the evidence revealed that neither of the north-side barges had been moved within the berth.  But read in the light most favorable to Berenyi, the complaint put defendants on notice that it is alleging damages resulting from Kinder Morgan's failure to secure one of its barges, and Berenyi may attempt to prove that such a failure was negligent at trial.

In admiralty cases, a plaintiff's cause of action for negligence is to be determined under the principles of maritime negligence law rather than common law negligence. Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 411 (1953).  "Drawn from state and federal sources, the general maritime law is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules." E. River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 864 (1986).  The elements of a maritime negligence cause of action are: (1) the existence of a duty required by law that obligates a person to conform to a certain standard of conduct in order to protect another against unreasonable risks of harm; (2) a breach of the said duty by engaging in conduct that falls

16

below the applicable standard; (3) a causal connection between the improper conduct and

the resulting injury; and (4) an actual loss or injury to the plaintiff due to the improper

conduct.  Schumacher v. Cooper, 850 F. Supp. 438, 447 (D.S.C. 1994).  The plaintiff has

the burden of proof for each of these elements in a maritime negligence cause of action.

Id.

　　　　Under the first element, general maritime law imposes a duty to exercise

reasonable or ordinary care under the circumstances.  Bubla v. Bradshaw, 795 F.2d 349,

353 (4th Cir. 1986).  Berenyi argues that as either the owner or bailee of the barge,

"Kinder Morgan had the duty to exercise the care of a reasonably prudent mariner to

make sure that the barge was properly moored in her berth."  ECF No. 54 at 9.  Berenyi

also presents evidence that Nucor informed Kinder Morgan of the need to ensure that the

barges stay away from the sheet pile wall.  ECF No. 54 at 5 (citing ECF No. 54-2 at 228,

McGuire Dep. at 22:11–16.  Lastly, Berenyi presents evidence that a Kinder Morgan

employee was responsible for ensuring that all barges were secured to the Nucor berth

before leaving on September 8, 2017.  ECF No. 54-2 at 213, Davis Dep. at 110:11–17.

The Kinder Morgan defendants do not dispute that they owed a duty to Berenyi.  For

purposes of summary judgment, the court finds that Berenyi has established that the

Kinder Morgan defendants owed a duty of reasonable care to secure the barges at the

Nucor berth.

　　　　Although they do not dispute the existence of a duty, the Kinder Morgan

defendants argue that no duty was breached.  As discussed, Berenyi must now prove that

of the two barges located on the north side of the berth, the one closest to the sheet pile

wall struck it because the barge was not properly moored.  The Kinder Morgan

defendants, conversely, claim that water pressure from the Cooper River caused the sheet pile wall to fall.

Notably, the parties agree that no witnesses saw the sheet pile wall collapse. The Kinder Morgan defendants argue that in the absence of any witnesses, Berenyi has produced no evidence that Kinder Morgan's barge caused the sheet pile wall to fall, and as such, Kinder Morgan could not have breached a duty to Berenyi. Berenyi responds that its claims can survive summary judgment under two theories of negligence: first, under a theory that there is a presumption of fault in such scenarios and second, under a theory of res ipsa loquitor. The court considers each argument in turn and declines to apply those rules. Nevertheless, the court ultimately denies the Kinder Morgan defendants' motion for the reasons discussed in the final subsection.

### 1. __Louisiana__ Rule

First, Berenyi argues that the Kinder Morgan defendants fall under the "Louisiana rule." Under the Louisiana rule, "when a vessel breaks free from its moorings and drifts into an allision with a stationary object, the moving vessel is presumed at fault." Norfolk S. Ry. Co. v. Moran Towing Corp., 718 F. Supp. 2d 658, 661 (E.D. Va. 2010) (citing The Louisiana, 70 U.S. 164 (1865)) (other citation omitted). In other words, once the fact of contact between the vessel and the stationary object has been established, the Louisiana rule shifts the burden of proof to the owner of the moving vessel to prove that the allision did not result from the owner's negligence. Id.

While Berenyi properly cites the rule established in The Louisiana, along with the policy reasons supporting the rule, Berenyi skips the critical step of establishing that the rule applies in the first place. The Louisiana rule only shifts the burden of proof to the

owner of the moving vessel once "the fact of contact . . . has been established." Id.  This is true for each of the cases applying the Louisiana rule that Berenyi cites.  As the Kinder Morgan defendants point out, in each of those cases, the vessel in question had indisputably broken free and caused damages.  See Pasco Mktg., Inc. v. Taylor Towing Serv., Inc., 554 F.2d 808, 810 (8th Cir. 1977) (establishing that the barges moored to trees had broken off from the cables and struck a dock); Lower R. Ship Servs., Inc. v. Casteel, Inc., 1991 WL 13867, at *2 (E.D. La. Jan. 30, 1991) (observing, under the findings of fact, that the barges had been "shifted," "re-moored," and "came loose" from the dock).  Thus, in those cases, the only issue left for courts to decide was whether the defendant could rebut the presumption by showing that (1) the moving vessel was without fault, (2) the collision was the fault of the stationary object, or (3) the accident was inevitable—in other words, that the collision was not actually the result of negligence.  See CSX Transp., Inc. v. M/V Hellespont Mariner, 943 F.2d 48 (4th Cir. 1991) (unpublished opinion).  However, that is not the case here.  Certainly, Berenyi claims that the Kinder Morgan barge was loosely moored, drifted from where it was docked, and struck the sheet pile wall.  However, those facts have not been conclusively established such that this case raises the mere question of law as to whether the presumption may be overcome.  In other words, the Louisiana rule does not stand for the proposition that the finder of fact may presume that a vessel drifted and collided with a stationary object; rather, it stands for the rule that negligence may be presumed if the vessel did in fact break free and so collide.  See Rederi v. Tug Hawkins Point, 1976 WL 6455375, at *1 (D. Md. Oct. 15, 1976) (declining to adopt the presumption of negligence against tug operator "where it is not at all clear as to exactly who may have caused the

19

collision with the pier"). This distinction is evident in Berenyi's own articulation of its argument; it states: "Since the Kinder Morgan barge struck a stationary object, the sheet pile wall, Kinder Morgan is presumed to be at fault for allowing its barge to strike the sheet pile wall." ECF No. 54 at 14. But Berenyi has not proven the first part of that corollary—that the barge struck the wall. In short, Berenyi has put the plank out without anyone to walk it.

The same is true for Berenyi's secondary argument that fault is presumed under the Oregon rule. "The Oregon Rule is a presumption specific to maritime allision cases providing that a moving vessel is presumed to be at fault when it allides with a stationary object." Dann Marine Towing, L.C. v. McLean Contracting Co., 2010 WL 1486008, at *5 (E.D. Va. Jan. 21, 2010) (citing The Oregon, 158 U.S. 186, 197 (1895)) (emphasis omitted). Like the Louisiana rule, however, the Oregon rule is inapplicable here because it has not been established as fact that the barge at issue was in motion. Again, to reach such a determination, the court would have to resolve the factual inquiry of whether the barge had, in fact, struck the sheet pile wall or if the sheet pile wall fell due to natural conditions, as the Kinder Morgan defendants suggest. Since sufficient evidence of those facts have not been presented in either direction, the court declines to find that either the Louisiana or Oregon rule apply.

### 2. Res Ipsa Loquitor

Second, Berenyi argues that the doctrine of res ipsa loquitor establishes that there is a genuine issue of material fact as to its negligence claim. The doctrine of res ipsa loquitor "allows the finder of fact to infer negligence from the unexplained happening of an event which, in the ordinary course of things, would not occur in the absence of

negligence." Great Am. Ins. Co. v. Pride, 847 F. Supp. 2d 191, 205 (D. Me. 2012) (citing 1 Thomas J. Schoenbaum, Admiralty & Maritime Law § 5-2 (1994)).

Berenyi, citing the Supreme Court decision in Johnson v. United States, 333 U.S. 46 (1948), argues that in a maritime action, res ipsa loquitor "enables a plaintiff to prevail . . . in proving negligence even though the plaintiff cannot show exactly who or what caused its injury." ECF No. 54 at 16. But Berenyi's contention that it may establish negligence[5] prior to trial is unsupported by the law. While the Supreme Court in Johnson recognized the applicability of res ipsa loquitor in admiralty and maritime cases, the decision stands for the principle that res ipsa loquitor "permits the trier of fact to draw inferences of negligence." Est. of Larkins v. Farrell Lines, Inc., 806 F.2d 510, 512 (4th Cir. 1986) (emphasis added). As such, the theory of res ipsa loquitor is ordinarily a question for the jury. See id. at 512–13 (holding that the doctrine of res ipsa loquitor should not mean that the jury is "deprive[d] . . . of its traditional role of assigning fault in negligence actions."); Mercury Yacht Charters, LLC v. II Tony's Inc., 2014 WL 12575771, at *1 n.1 (N.D. Fla. Sept. 9, 2014) ("[R]es ipsa loquitor . . . is ordinarily a jury question). To be sure, this matter is slated for a bench trial, but it follows that it would be similarly premature to rule for or against the applicability of the doctrine prior to trial.

Even if the court were to analyze the doctrine at this stage, rather than at trial, the court would still find that application of res ipsa loquitor is premature. As the Fourth

---

[5] Although Berenyi raises res ipsa loquitor to argue that summary judgment is not warranted in the Kinder Morgan defendants' favor, it appears to also be arguing that summary judgment is warranted in Berenyi's favor on the issue. By arguing that res ipsa loquitor "enables a plaintiff to prevail," Berenyi is effectively arguing that the Kinder Morgan defendants are liable, instead of arguing why they have failed to establish that they are not liable. In any event, the court finds that application of the doctrine is premature for the reasons set forth below.

Circuit specified, "[t]he mere happening of an accident . . . does not give rise to a res ipsa inference of negligence or breach of duty under . . . general maritime law." Larkins, 806 F.2d at 512 (citations omitted).  Instead, res ipsa loquitor requires that the finder of fact determine by a preponderance of the evidence that "(1) the injured party was without fault, (2) the instrumentality causing the injury was under the exclusive control of the defendant, and (3) the mishap is of a type that ordinarily does not occur in the absence of negligence." Sutton v. Royal Caribbean Cruises Ltd., 774 F. App'x 508, 513 (11th Cir. 2019).  The court finds that there are genuine issues of material fact regarding at least one of these elements.  For example, there is a genuine issue as to whether Berenyi may have had a role in the wall's collapse by "fail[ing] to install the wall based on design plans supported by engineering calculations." ECF No. 59 at 14.  As such, the court reaches no determination on the issue of res ipsa loquitor at this stage of the proceedings, but Berenyi will be permitted to raise the doctrine at trial.

### 3.  Kinder Morgan Defendants' Arguments

Having determined that the Louisiana rule, the Oregon rule, and the doctrine of res ipsa loquitor do not suggest that summary judgment should be granted, the court turns back to the Kinder Morgan defendants' arguments.  The Kinder Morgan defendants argue that "the evidence proves conclusively that the . . . [b]arge did not strike the wall at all on the evening of September 8." ECF No. 45-1.  But tellingly, they support that statement by immediately arguing that the Nucor, Berenyi, and Kinder Morgan "all testified that no one observed the event that caused the temporary wall to collapse.  As such, there were no eyewitnesses to the circumstances that caused the wall to collapse." Id.  The lack of eyewitnesses may have spelled doom for Berenyi if it had been the one to seek summary

judgment in its favor, but Berenyi is not the movant here; the Kinder Morgan defendants

are.  Accordingly, the Kinder Morgan defendants "shoulder[] the initial burden of

demonstrating to the court that there is no genuine issue of material fact." Taylor v.

Lowe's Home Ctrs., LLC, 2018 WL 1431560, at *2 (D.S.C. Mar. 22, 2018) (citing

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  Only after they have made this

showing does the issue turn to whether the non-moving party has demonstrated specific,

material facts that give rise to a genuine issue.  In the absence of any eyewitnesses, the

court cannot conclude that the Kinder Morgan defendants have shown that there is no

genuine issue of material fact as to whether the barge docked closest to the sheet pile wall

struck the wall.  As perhaps their most compelling evidence, the Kinder Morgan

defendants argue that the barge located nearest to the wall was secured when workers

arrived at the berth on the morning of September 9, 2017.  However, even this evidence

fails to fully support their claims.  Both parties rely on a similar photograph for arguing

their respective positions—that the barge was or was not secured—and it is not clear to

the court whether the photo depicts the barge as fully secured.  See ECF No. 53-1 at 107.

The lack of certainty is reinforced by the testimony of deponents who were asked to

opine about whether the barges had been properly secured.  For example, the Kinder

Morgan defendants claim that Tony Berenyi ("Mr. Berenyi"), Berenyi's sole shareholder,

conceded "that the barge located nearest to the temporary wall was secured when he

arrived." ECF No. 45-1 at 12.  The Kinder Morgan defendants do not provide the

applicable citation, and upon review, it appears that Mr. Berenyi in fact testified to the

contrary. See ECF No. 45-3, Berenyi Dep. at 104:10–13 ("Q: Okay.  Were those two

barges secured in any way to the side of the slip?  A: One was loosely secured and the

23

other was better secured.").  Other deponents were similarly uncertain, based on the

photograph, about whether the barge was properly moored.  See ECF No. 54-2 at 199,

Davis Dep. at 65:4–15 ("Q: Does that barge appear to be properly secured to the side of

the berth . . . on the north side?  A: On the north side?  I can't tell.  I mean, there were

some times I know that we left a lot of slack in the lines because of the -- tides were so

high.").  Given the uncertainty that remains regarding if or how the allision occurred, the

court finds that summary judgment is inappropriate.

 Even if the court were to find that the Kinder Morgan defendants had made the

threshold showing, a reasonable factfinder could still find in Berenyi's favor after

considering Berenyi's evidence on the record.[6]  First, according to Berenyi, cargo was

removed from the barges, so they sat higher on the water and were thus "more susceptible

to being moved by the wind."  ECF No. 54 at 6; see ECF No. 54-2 at 208, Davis Dep. at

84:12–14.  Second, Berenyi cites testimony from Mr. Berenyi, along with photographs

taken of the extracted wall, indicating that the indentation on the sheet pile wall matches

the width of the barge.  ECF No. 53, Berenyi Aff. ¶ 14; ECF No. 53-1 at 99–100.  Third,

Mr. Berenyi states that the sheet pile wall was designed to withstand water pressure from

the Cooper River, and the damages could only have been caused by a large, heavy object

like the barge.  Berenyi Aff. ¶ 17.  Kinder Morgan retorts that the sheet pile wall was not

---

[6] In addition to the evidence discussed, Berenyi submits that Kinder Morgan's
corporate representative "admitted that a person can move the barges himself by pulling
on the barge's lines," and as such, it is possible that someone could have pulled the barge
away from the sheet pile wall and back to the Nucor berth during the morning of
September 9.  ECF No. 54 at 6.  In addition to being circumspect evidence, the court has
reviewed the deposition excerpt cited by Berenyi and fails to see where the deponent
supposedly made that admission.  See ECF No. 54-2 at 220–21, Davis Dep. at 128:1–
129:24.  As such, the court does not weigh this evidence but finds that Berenyi has
otherwise presented a genuine issue of material fact.

built with the proper specifications, but at minimum, the conflicting testimony presents a genuine dispute. Viewing the evidence in the light most favorable to Berenyi, as the non-moving party, there is sufficient evidence for the factfinder to find in Berenyi's favor on those various issues of contention.

### III.   CONCLUSION

For the reasons set forth above, the court **DENIES** Berenyi's motion to amend and **DENIES** the Kinder Morgan defendants' motion for summary judgment.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**July 13, 2022**
**Charleston, South Carolina**